**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**IN THE MATTER OF**

**THE EXTRADITION OF**                              **11-M-2057**

**Nokour Chougui ALI**
_____


### MEMORANDUM OF LAW REGARDING PROCEDURES FOLLOWING PROVISIONAL ARREST


**I.  INTRODUCTION**

The Defendant was arrested on June 21, 2011, pursuant to a complaint for the provisional arrest of the defendant in contemplation of his extradition to Canada.  The Complaint and Arrest Warrant were signed by the Court on June 15, 2011.  The defendant made his initial appearance on the Complaint on June 21, 2011.  At his initial appearance the Court found the defendant eligible for appointed counsel.  Assistant Public Defender Kimberly A. Schechter accepted the assignment and has appeared as defense counsel in these proceedings.  The defendant, a citizen of Chad, does not have legal status in the United States and is the subject of an arrest Warrant in Canada for violent offenses committed in or about Sudbury, Ontario, which occurred on April 14, 2011.

The defendant and counsel appeared for a status report on June 30, at which time the Court scheduled the matter for July 26, 2011, regarding the issue of probable cause for the purpose of the Provisional Arrest.  This memorandum is submitted in regard to the proper scope of the scheduled proceeding in light of the stage at which the matter now stands, i.e., prior to the filing, by Canada, of its formal request for extradition.

## II.  PROVISIONAL ARREST

The Defendant's extradition will be sought by Canada pursuant to its extradition treaty with the United States, 27 U.S.T. 983. The federal statute that implements the United States' extradition treaties with other nations, Title 18 U.S.C. §§3184 <u>et seq</u>., does not specifically mention provisional arrest.[1]  A provisional arrest of the sort now before the Court, however, is specifically provided for in Article 11 the Treaty on Extradition Between Canada and the United States.  A copy of the Treaty, as amended by the First and Second Protocols thereto, is attached to this Memorandum as **Exhibit A.**

---

[1] "Provisional Arrest" is mentioned in 18 U.S.C. Section 3187, but the sense in which the term is used there refers to fugitives from the United States and thus is inapplicable in a proceeding such as the one before this Court.

2

Article 11(1) of the Treaty provides in part that "in case of urgency," a party to the Treaty may apply for the "Provisional Arrest" of the person sought "pending the presentment of the request for extradition through the diplomatic channel."  The Treaty also provides, in Article 11, that a provisional arrest request must contain "a statement of the existence of a warrant of arrest ..., and such further *information* ... as would be necessary to justify the issue of a warrant of arrest had the offense been committed ... in the territory of the requested state.  Treaty at Article 11(1).  The Treaty further provides that a person arrested on a warrant for provisional arrest "shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to [an application for provisional arrest] *if a request for extradition* and the documents specified in Article 9 [of the Treaty] have not been received." Article 11 of the Treaty thus differs from Article 10(1) of the Treaty, which requires *"evidence"* of probable cause, and then sets forth the documentation necessary to support a final order of extradition.  *See*, <u>Caltagirone v. Grant</u>, 629 F.2d 739, 747-748 (2d Cir. 1980) (noting the different types of proof required in the provisional arrest and formal extradition contexts.)

It is clear from the structure of the Treaty that Extradition and Provisional Arrest are different and separate stages of a proceeding regarding the detention and subsequent transfer of a

person held in the requested country (here, the United States)for crimes allegedly committed by that person in the country making the request (Canada). The scope of a hearing following a formal extradition request, set forth below, is itself quite narrow. Logically, the proper scope of a hearing concerning a provisional arrest would be even more limited, especially with regard to the type of evidence required for the Court to find that the extraditee can be held pending the arrival of a formal request for extradition. Provisional arrests need be supported only by "information" establishing probable cause, whereas a hearing following a formal extradition request must be based upon "evidence" thereof. Caltagirone v. Grant, 629 F.2d at 747-748. The complaint submitted in the present case meets the standard required for provisional arrest, as it contains sufficient "information" to support the warrant issued by the Court.

### III. Scope of Extradition Hearing

It is clear that the probable cause required to hold the defendant pending the formal extradition request need be established only by the "information" that already is set forth in the Complaint, in anticipation of the receipt of the documentary "evidence" that will accompany an extradition request that must be received within the relevant 60-day period. Yet even after the formal extradition request arrives from Canada, the scope of the

4

final extradition request is very narrow.  Stated briefly, even at that stage, not yet reached in the present case, a defendant is not permitted to contradict the evidence against him, and the Court does not have the authority to weigh the credibility of the evidence submitted by the requesting state.

It is well-settled in extradition law that "[t]he primary source of evidence for the probable cause determination is the extradition request, and any evidence in it is deemed truthful for purposes of this determination." In re Extradition of Atta, 706 F. Supp. 1032, 1050-1051 (E.D.N.Y. 1989), citing Collins v. Loisel, 259 U.S. at 315-316.  Moreover, "[u]nique rules of wide latitude govern reception of [the Government's] evidence in Section 3184 hearings. Papers offered by the foreign country must be accepted." Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969), cert. denied, 398 U.S. 903 (1970); see also O'Brien v. Rozman, 554 F.2d 780, 783 (6th Cir. 1977).

The standard of proof in extradition proceedings is that of probable cause as defined in federal law. Sindona v. Grant, 619 F.2d 167 (2d Cir. 1980).  This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. Coleman v. Burnett, 477 F.2d 1187, 1202 (D.C. Cir. 1973).  The Supreme Court

stated in *Collins v. Loisel, supra*, that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. 309, 316.   The Fourth Circuit explained the court's function in an extradition proceeding in the following terms:

> The extradition hearing is not designed as a final trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws.

*Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976.) *See also, Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (judge's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir. 1962); *Merino v. United States Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 397 U.S. 872 (1964); *In re Ryan*, 360 F.Supp. 270, 273 (E.D.N.Y.), *aff'd*, 478 F.2d 1397 (2d Cir. 1973).

Extradition law does not require that witnesses provide direct evidence.   Reliance on an investigator's affidavit is not uncommon or inadequate.   For example, in <u>Emami v. U.S. Dist. Court for the</u>

6

<u>N. Dist. Of Cal.</u>, 834 F.2d 1444 (9th Cir. 1987), involving a requested extradition for trial on fraud charges, "[t]he factual allegations supporting the extradition request are based on the sworn affidavit of [the] German prosecutor." <u>Id</u>. at 1447. The court of appeals wholly rejected Emami's challenge to the prosecutor's statement as the basis for probable cause, explaining that "under the general extradition law of the United States and the provisions of the Treaty, the hearsay statements [the prosecutor] summarized in his affidavit are competent evidence." <u>Id</u>. at 1450-1451. That analysis was echoed later in <u>Then v. Melendez</u>, 92 F.3d 851, 855 (9th Cir. 1996), in which the court of appeals affirmed a probable cause finding based in significant part on an affidavit by a Singapore police inspector recounting evidence told to him by the witness.

In <u>Bovio v. United States</u>, 989 F.2d 255 (7th Cir. 1993), involving a fugitive wanted by Sweden for drug smuggling, "[t]he government's crucial submission is [a Stockholm police inspector's] statement ... . [The inspector] investigated and interrogated witnesses regarding the events which led to the arrest warrant for Bovio." <u>Id</u>. at 259. Among other challenges, Bovio argued that the inspector's statement failed to show "how he obtained the information ..., whether witnesses were under oath, and whether there are any original notes or recordings of witness interviews."

*Id*.  The court of appeals rejected this attack, holding instead that it presented credibility issues that would be determined at the criminal trial.  *Id*. at 259, 260.  See also Noel v. United States, 12 F. Supp. 2d 1300, 1303 (M.D. Fla. 1998) ("[t]he factual allegations of the Federal Republic of Germany's extradition request are set forth in what appears to be a statement given under oath by the German District Attorney responsible for the proceedings against Petitioner").

An extraditee's right to controvert the evidence introduced against him is "limited to testimony which explains rather than contradicts the demanding country's proof." *Hooker v. Klein, supra*, 573 F.2d at 1368.  The district court in *Matter of Sindona*, 450 F. Supp. 672 (S.D.N.Y. 1978), *aff'd*, 619 F.2d 167 (2d Cir. 1980), discussed the distinction between contradictory and explanatory evidence and cited the established authority for the proposition that an extradition hearing should not be transformed into a full trial on the merits:

> "The distinction between 'contradictory evidence' and 'explanatory evidence' is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting 'explanatory evidence,' the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause.  **The scope of this evidence is restricted to what is appropriate to an extradition hearing.  The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a**

8

**full trial on the merits.**   The Supreme Court has twice cited with approval a district court case which aptly summarizes the relevant considerations.   The Supreme Court decisions are *Collins v. Loisel*, 259 U.S. 309, 316, 42 S.Ct. 469, 66 L.Ed. 956 (1922), and *Charlton v. Kelly*, 229 U.S. 447,461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). The district court opinion is *In re Wadge*, 15 F. 864, 866 (S.D.N.Y 1883) in which the court dealt with the argument of an extraditee that he should be given an extensive hearing in the extradition proceedings:

'If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter.  The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here.  This would be in plain contravention of the intent and meaning of the extradition treaties.'"

450 F.Supp 672 at 685 (emphasis added).  An extraditee's grounds for opposition to an extradition request are therefore severely circumscribed.  *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978); *First National City Bank of New York v. Aristeguieta*, 387 F.2d 219, 222 (2d Cir. 1960); *In Re Shapiro*, 352 F. Supp. 641, 645 (S.D.N.Y. 1973).

Given the limited nature of an extradition hearing, the Court properly confines an extraditee's proposed evidence within narrow limits.  *See*, In the Matter of the Extradition of Sukhminder Singh,

123 F.R.D. 108, 111 (D.N.J. 1987).  "[E]vidence of alibi or of facts contradicting the demanding country's proof or of a defense such as insanity may properly be excluded." Shapiro v. Ferrandina, 478 F.2d 894, 901 (2d Cir.), *cert. dismissed*, 414 U.S. 884 (1973). Contradictory evidence properly may be excluded. Charlton v. Kelly, 229 U.S. 447, 461 (1913).  Likewise, a defendant may not pose questions of credibility. See, e.g., Eain v. Wilkes, 641 F.2d 504, 511 (7th Cir.), *cert. denied*, 454 U.S. 894 (1981); In re Extradition of Locatelli, 468 F.Supp. 568, 573-74 (S.D.N.Y.1979).

Thus an extraditee may NOT introduce evidence which 1)conflicts with the evidence submitted on behalf of the demanding state (*Collins v. Loisel*, 259 U.S. 309, 315-17 (1922)); 2) establishes an alibi (*Abu Eain v. Adams*, 529 F.Supp 685 (N.D.Ill.); 3)sets up an insanity defense (*Hooker v. Klein, supra*); 4) or impeaches the credibility of the demanding country's witnesses (*In re Locatelli*, 468 F.Supp. 568 (S.D.N.Y. 1979)).

Explanatory evidence "does not contradict or impugn the testimony on the part of the prosecution, but serves to explain it so as to show that the consequence otherwise deducible does not follow." In re Ezeta, 62 F. 964, 992 (N.D.Ca.1894).  Attacks upon credibility are improper and should not be considered by the Court. See In re Extradition of Locatelli, 468 F.Supp. 568, 573-74

(S.D.N.Y.1979)(The accused has no right to present evidence calculated only to contradict the demanding country's proof or pose questions of credibility. *Citing* <u>Collins v. Loisel</u>, 259 U.S. 309 (1922) and <u>Shapiro v. Ferrardina</u>, *supra*, 478 F.2d at 901.)  The accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof. To do otherwise would convert the extradition into a full-scale trial, which it is not to be.  <u>Eain v. Wilkes</u>, 641 F.2d 504 (7th Cir. 1981), <u>cert. denied</u>, 454 U.S. 894 (1981).

As explained by the Second Circuit in  <u>Shapiro v. Ferrandina</u>, 478 F.2d 894 at 905 (2d Cir.), *cert denied*, 414 U.S. 884 (1973): "The magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause and the extraditee's right to introduce evidence is thus limited to testimony which explains rather than contradicts the demanding country's proof, and its precise scope is largely in the Commissioner's discretion.  The judge's refusal to examine the credibility of the testimony and statements included in the translated material was clearly proper, since the declarants were not before him."

## IV.   CONCLUSION

The Government respectfully submits that the Complaint as submitted establishes probable cause for the Provisional Arrest of the defendant, and that the Court should find on the present record that the defendant may be held pending the timely receipt of a formal extradition request from Canada.


Dated: Buffalo, New York, July 7, 2011.


Respectfully submitted,

WILLIAM J. HOCHUL
UNITED STATES ATTORNEY


BY:     s/Paul J. Campana
        PAUL J. CAMPANA
        Assistant U.S. Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5819
        Paul.Campana@usdoj.gov

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IN THE MATTER OF

THE EXTRADITION OF                                    11-M-2057

Nokour Chougui ALI

_____

### CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2011, I electronically filed the foregoing **MEMORANDUM OF LAW REGARDING PROCEDURES FOLLOWING PROVISIONAL ARREST** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant on this case:


Kimberly A. Schechter, Esq.



 *s/Laura Rogers*
Laura Rogers, Legal Assistant